THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JEFFREY B. PICKENS, Defendant-Appellant.

Fourth District No. 4—91—0566

Opinion filed April 8, 1992.

Daniel D. Yuhas and Charles L. Jones, both of State Appellate Defender's Office, of Springfield, for appellant.

Lawrence R. Fichter, State's Attorney, of Decatur (Kenneth R. Boyle, Robert J. Biderman, and Jeffrey K. Davison, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE GREEN delivered the opinion of the court:

On December 26, 1990, an information was filed in the circuit court of Macon County charging defendant Jeffrey B. Pickens in three counts. Count I charged that on or about December 14, 1990, he unlawfully possessed a substance containing more than five grams but not more than 15 grams of cocaine with intent to deliver it in violation of section 401(c)(2) of the Illinois Controlled Substances Act (Act) (Ill. Rev. Stat. 1989, ch. 56½, par. 1401(c)(2) (text as amended by Pub. Acts 86—266, §1, eff. Jan. 1, 1990 (1989 Ill. Laws 1893, 1895); 86—442, §1, eff. Jan. 1, 1990 (1989 Ill. Laws 2681, 2684))) and section 5—5—3(c)(2)(D) of the Unified Code of Corrections (Code) (Ill. Rev. Stat. 1989, ch. 38, par. 1005—5—3(c)(2)(D)). Count II charged defendant with merely violating section 401(c)(2) of the Act by unlawful possession of cocaine with intent to deliver and alleged the weight of the cocaine was one or more grams and less than 15 grams. (This charge was later dismissed on the State's motion.) Count III charged defendant with the included offense of mere possession of less than 15 grams of cocaine in violation of section 402(c) of the Act (Ill. Rev. Stat. 1989, ch. 56½, par. 1402(c) (text as amended by Pub. Acts 86—266, §1, eff. Jan. 1, 1990 (1989 Ill. Laws 1893, 1898-99); 86—442, §1, eff. Jan. 1, 1990 (1989 Ill. Laws 2681, 2687))).

After a trial by jury, the court entered judgment on May 30, 1991, on a verdict finding defendant guilty of count I. On July 1, 1991, the court sentenced defendant to four years' imprisonment and a street value fine of $503. The court also assessed a laboratory fee against defendant of $50 and granted him seven days' credit upon his sentence for time previously served.

On appeal, defendant's major claim of error is that the State failed, as a matter of law, to prove beyond a reasonable doubt that any cocaine he possessed weighed in excess of five grams. The significance of the weight of the cocaine is that by the terms of section 5—5—3(c)(2)(D) of the Code, when the amount of cocaine involved weighs in excess of five grams, a person convicted of violating section 401(c)(2) of the Act cannot receive a sentence of probation, conditional discharge, or periodic imprisonment. The five-gram factor is the difference between count I and count II. Defendant maintains we should reduce his conviction to that for count III, the included offense of possession, and remand the case for resentencing. He also asserts that in any event, he is entitled to a 10-day rather than a 7-day credit for

time served prior to sentencing and a $5-per-day credit on his fine for that time served.

Although the reasonable doubt issue is an interesting one, we hold the proof of guilt of the greater offense was sufficient. However, we agree with defendant as to his claims for additional credit for time served and as to his street-value fine.

As the sole question in regard to the sufficiency of the proof concerns the weight of cocaine found in defendant's possession, we need discuss only the proof on that issue. All of that evidence came from the testimony of Mark Paiva, a drug chemist for the Illinois State Police. He testified at trial as follows: (1) he examined People's exhibit No. 1 (previously identified as the substance alleged to have been in defendant's possession) for the presence of controlled substances; (2) he first weighed the plastic bag containing 17 smaller bags and got a gross weight of 6.4 grams; (3) he then proceeded to weigh the content of each smaller bag individually; (4) he weighed the content of each of the small bags using a top-loading analytical balance, by placing a small plastic weight boat on top of the balance, resetting the scale to zero, and placing the powdery substance in the weight boat; and (5) he added the weight of the contents of each of the 17 bags and obtained an aggregate weight of 5.03 grams of the 17 bags together, and in his opinion, the aggregate weight of those bags was 5.03 grams.

On cross-examination, Paiva stated the following: (1) by the manufacturer's specifications the scale he used to weigh the substance had a plus or minus margin of error of .005 grams; (2) there is no way of determining whether the scale was erring on the low or high side, or was perfectly accurate; (3) the scale weighs to the thousandth of a gram, but automatically rounds up to the hundredth of a gram for easier readability; and (4) the margin of error was always present. Paiva also testified on cross-examination that the scale does not give a weight to the third figure after the decimal point but rather registers to the nearest figure second from the decimal point. The testimony was not clear as to whether this process creates the .005-gram margin of error concerning which he had previously explained.

On redirect examination, the defense asked Paiva if any way existed by which he could determine whether "the scales were reading the deviant amounts of .005 grams." Paiva responded that no way existed to make that determination by an individual weighing but he said "over a period of time [he thought] it would pick up a bias if it was, if it was terribly high or terribly low." He then stated "we have 3 balances in the laboratory" and he sometimes used one and some-

times another. He stated he thought he "would notice the difference if there was something that was continuously off." Paiva then explained the steps he took to check the accuracy of the scales. However, nothing in his testimony negated the existence of a .005-gram margin of error which was applicable to each weighing.

The State does not dispute that it had the burden of proving beyond a reasonable doubt that the cocaine possessed by defendant had a weight in excess of five grams in order to convict defendant under count I. This requirement is similar to the duty on the State in *People v. Hayes* (1981), 87 Ill. 2d 95, 429 N.E.2d 490, where proof beyond a reasonable doubt of a prior conviction for theft was held to be necessary to enhance a subsequent theft conviction to a felony. The enactment of section 111—3(c) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1989, ch. 38, par. 111—3(c)), making the prior conviction no longer an element of an offense enhanced, thereby changes the rule of *Hayes* but does not negate the analogy to the law at the time of *Hayes*. Similarly, in *People v. Speed* (1982), 106 Ill. App. 3d 890, 436 N.E.2d 712, proof of the weight of cannabis possessed by an accused was deemed to be insufficient to meet the reasonable doubt standard and a conviction for felony possession of more than 30 grams but not more than 500 grams of cannabis (Ill. Rev. Stat. 1979, ch. 56½, par. 704(d)) was reduced on appeal to a misdemeanor.

When a trier of fact has found an accused guilty of an offense, a reviewing court will not set that finding aside as long as "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Emphasis in original.) (*Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789; see also *People v. Eyler* (1989), 133 Ill. 2d 173, 191, 549 N.E.2d 268, 276, *cert. denied* (1990), 498 U.S. 881, 112 L. Ed. 2d 174, 111 S. Ct. 215.) The determination of the credibility of the witness is the sole responsibility of the trier of fact except under extremely rare circumstances not present here. *People v. Phillips* (1989), 127 Ill. 2d 499, 514, 538 N.E.2d 500, 505, *cert. denied* (1990), 497 U.S. 1031, 111 L. Ed. 2d 798, 110 S. Ct. 3290.

Paiva testified he made 17 separate weighings and obtained a total weight of 5.03 grams of cocaine and each weighing was subject to a margin of error of .005 gram. The evidence is not entirely clear as to whether the margin of error arose because the scale registered only to two figures past the decimal point or because of other inherent inaccuracies. In any event, giving full credibility to Paiva's testimony, as we must, we are still faced with the inherent fallibility of the

scale which is such that if several of the weighings were overstated to the margin of error and none of the others were understated, the cocaine did not weigh five grams. Putting it another way, if all of the readings overstated the weight to 40% of the margin of error, the cocaine would not actually have weighed more than five grams.

The task of determining whether a reasonable trier of fact could have found *beyond a reasonable doubt* that the cocaine weighed over five grams is entirely dependent upon the law of averages and some conception of how likely a result must be to be proved beyond a reasonable doubt. No helpful case has been called to our attention on the latter point. The issue involved would seem to arise mostly when proof of a measurement is necessary to prove an offense. The two most likely examples are the determining of the weight of contraband and the determination of the percentage of alcohol in human blood or breath.

Defendant relies on the *State v. Bjornsen* (1978), 201 Neb. 709, 271 N.W.2d 839, *People v. Campos* (1982), 138 Cal. App. 3d Supp. 1, 188 Cal. Rptr. 366, and *State v. Boehmer* (1980), 1 Haw. App. 44, 613 P.2d 916, all of which concern tests to determine alcohol content in the blood of a motorist by the administration of a single test the results of which would show an insufficient amount of alcohol if the recognized margin of error would have been applied most favorably to the accused. In *Bjornsen*, a conviction for driving while having a .10% blood-alcohol level was reversed when the sole evidence of guilt was the result of a test which did not show a .10% content after reducing the test result by the margin of error. Under similar circumstances in *Campos*, a trial court committed reversible error in instructing the jury as to a statutory presumption arising from evidence of a .10% content of alcohol in the blood. In *Boehmer*, in consolidated cases, trial courts committed reversible error at bench trials in relying upon a similar statutory presumption when the test results in evidence, when reduced by the margin of error, failed to equal the required .10%.

■ Unlike in the above cases, here a series of scientific measurements were made. No one error would have been prejudicial to the defense. In fact, at least six of the readings would have to have been overweight to the full amount of the margin of error and none of the other weighings given readings too low in order for the cocaine not to have weighed in excess of five grams. No evidence was introduced explaining how to calculate the odds as to whether the scales used did actually overweigh the cocaine by nearly .03 grams. Nonetheless, the evidence did show that an unusual sequence of mismeasurements

would have had to occur for sufficient overweighing to have taken place. We hold that a reasonable jury could find the likelihood of an overweighing by .03 grams was too remote to create a reasonable doubt as to whether the cocaine's total weight exceeded five grams.

 The parties do not dispute that defendant was entitled to credit against his sentence of imprisonment for five days consisting of two days before trial and three days after conviction before defendant posted an additional bond and was released. The dispute concerns a period of time thereafter from June 27, 1991, when he was taken into custody after he failed to appear for further hearing. He then remained in custody for an additional five days before sentencing. A motion was made by the State to revoke his bond but no proceedings for contempt were initiated. The State maintains defendant was, in effect, being held for contempt in which case he would not be entitled to credit for this period of time. (*People v. Totten* (1987), 118 Ill. 2d 124, 514 N.E.2d 959.) However, defendant was neither charged with contempt nor found to be in contempt. We conclude he was entitled to credit for those additional five days.

 The court imposed a street-value fine upon the basis of the judge's experienced belief that the street value of the cocaine was $100 per gram but the sole evidence before the court was the testimony of Decatur police narcotics agent Edward Root that each of the 17 packets had a street value of $25. The fine must be based on the evidence and reduced at the outset to the sum of $425. The State agrees that defendant is entitled to a reduction of the fine at the rate of $5 per day for time served prior to sentence. As we have determined that defendant is entitled to 10 days of such credit, the street-value fine must be reduced by an additional $50 to the sum of $375.

Accordingly, we affirm the conviction as to count I and as to the sentence imposed except that we remand to the circuit court of Macon County with directions that the time credit upon defendant's sentence of incarceration be increased to 10 days and his street fine be reduced to the sum of $375.

Affirmed and remanded with directions.

KNECHT and COOK, JJ., concur.