Paul J. BYRNE, Appellant,

v.

STATE of Alaska, Appellee.

No. 6375.

Court of Appeals of Alaska.

Nov. 12, 1982.

Lloyd Hoppner and Kenneth P. Ringstad, Rice, Hoppner, Brown & Brunner, Fairbanks, for appellant.

David C. Stewart, Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

Before BRYNER, C.J., COATS and SINGLETON, JJ.

## OPINION

PER CURIAM.

Paul J. Byrne was convicted of driving while intoxicated in violation of AS 28.35.-030 which defines driving while intoxicated, in part, as driving a motor vehicle when there is 0.10 percent or more by weight of alcohol in the driver's blood.

Byrne contends that the trial court erred in two respects. First he argues that his conviction was predicated on his blood alcohol rate not his driving, and therefore the trial court erred in admitting evidence that he drove erratically and appeared intoxicated to arresting officers. Second, he claims the trial court erred in admitting into evidence a "breathalyzer packet" because the respective documents contained within it were hearsay and not within an exception to the hearsay rule. Specifically, he contends that Rule of Evidence 803(8)(b)(iii) precludes characterization of the documents in the breathalyzer packet as within the public records exception to the hearsay rule. The "breathalyzer packet" is described more fully in *State v. Huggins*, Op. No. 127 at 2 n. 1 (Alaska App. September 17, 1982).

Byrne's first point is controlled by *Denison v. Anchorage*, 630 P.2d 1001 (Alaska App.1981). In that case we held that a defendant charged with driving while intoxicated under a theory that his blood alcohol level exceeded the statutory limit could offer evidence of his driving ability and general appearance to impeach the machine. We reasoned that the nexus between intoxication (manifested in poor driving and the appearance of drunkenness, i.e., bloodshot eyes and alcoholic breath) and an elevated blood alcohol level was sufficiently a matter of common sense and under-

standing that it did not require expert evidence as a foundation for its admission. Consequently, we concluded, since Alaska Rule of Evidence 401 allows introduction of any evidence having "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," evidence that the driver did not show signs of intoxication, either in his appearance or in his driving, would tend to establish that he did not have an elevated blood alcohol level. If a breathalyzer machine showed the contrary, the proffered evidence would help show that the breathalyzer machine was inaccurate.

Byrne attempts to distinguish *Denison* by arguing that only evidence which shows the exact level of alcohol in a person's blood can be admitted against a defendant in a DWI prosecution. Byrne confuses the relevancy of evidence with its conclusiveness. As we said in *Denison*,

> The municipality argues that individuals who have consumed sufficient quantities of alcohol to obtain breathalyzer readings of 0.10 percent or greater do not necessarily show outward signs of intoxication. This argument, however, misses the point, since the test of relevance has never required that the evidence offered be conclusive of the point of [sic] sought to be established. All that is required for evidence to be relevant is that it render the proposition for which it is offered more probable than it would otherwise have been. "Any more stringent requirement is unworkable and unrealistic." Alaska R.Evid., Commentary, Rule 401 at 64.

630 P.2d at 1003.

We are satisfied that there is a sufficient nexus between erratic driving and other indicia of intoxication and an elevated blood alcohol level that such evidence would tend to corroborate a breathalyzer reading showing an elevated blood alcohol level. The evidence was therefore relevant to this prosecution.

Byrne argues, nevertheless, that the probative value of the evidence was so weak and its prejudice so obvious that the trial court abused its discretion in failing to exclude the evidence under Alaska Rule of Evidence 403. We disagree. We believe the evidence in question highly probative of the accuracy of the breathalyzer reading. While we agree with Byrne that evidence of his appearance and erratic driving tended to portray him to the jury as a drunk driver, we believe that such a portrayal was a necessary corollary of the prosecution in question. It certainly is not the kind of prejudice that Evidence Rule 403 seeks to prevent, i.e., a decision by a jury on grounds totally unrelated to the elements of the crime in question.

■ Byrne argues that the trial court incorrectly admitted the "breathalyzer packet" under the public record exception to the hearsay rule. Alaska Rule of Evidence 803(8). He contends that Alaska Rule of Evidence 803(8)(b)(i–iii) precludes use of the public record exception to validate the admission of the breathalyzer packet. We rejected this argument in *State v. Huggins*, Op. No. 127 at 4–9 (Alaska App., September 17, 1982).

In *Huggins*, we relied upon the decision of the Alaska Supreme Court in *Wester v. State*, 528 P.2d 1179 (Alaska 1974), *cert. denied*, 423 U.S. 836, 95 S.Ct. 60, 46 L.Ed.2d 54 (1975), and *Keel v. State*, 609 P.2d 555 (Alaska 1980). We recognized that those cases were decided before the effective date of the new evidence code, but noted that Professor Salzberg, who prepared the commentary to the Alaska Rules of Evidence, indicated that *Wester* probably would have been decided the same way under the rule, although at first blush, it would appear that the rules were inconsistent with the *Wester* reasoning.

Byrne correctly points out that Salzberg's comments in context indicate his belief that while the public records exception to the hearsay rule would be inapplicable, the business records exception might be applicable. Nevertheless, our decision in *Huggins* was not based solely upon the commentary but upon our interpretation of the

policies underlying Alaska Rule of Evidence 803(8)(b)(iii) which exempts from inclusion within the exception "factual findings offered by the state in criminal cases." We concluded that the factual findings exempted were limited to those resulting from "an investigation made pursuant to authority granted by law." *See* Alaska R.Evid. 803(8)(a). In so doing, we recognized, though we did not state, that Alaska Rule of Evidence 803(8)(b)(iv) specifically exempts from coverage under the exception "factual findings resulting from special investigation of a particular complaint, case, or incident." We agree that the factual findings offered by the state in a criminal case under subsection (iii) cover a broader category than factual findings resulting from special investigation of a particular complaint, case, or incident under subsection (iv). Nevertheless, we concluded that before a factual finding would fall within the bar of any of these subsections, it would have to be made under circumstances in which the person making the factual finding could foresee its use in litigation and use this knowledge to manipulate the ultimate decision in the litigation.

In applying this test to the various items contained within the breathalyzer packet, we are satisfied that a state employee could not tamper with the findings in time to affect a specific prosecution. Any effort by state employees to tamper with the results reported in the breathalyzer packet thereby making all defendants who were administered a breathalyzer test with a particular instrument falsely appear intoxicated would be readily discoverable.

Finally, we conclude that defendant has ample protection against negligent preparation of the breathalyzer packet in Alaska's broad rules of criminal discovery, the requirement that the breathalyzer machine be available for inspection by the defendant or his representative and with the defendant's right to discover sample "ampoules." *See Lauderdale v. State*, 548 P.2d 376 (Alaska 1976) and defendant's right to discover samples of his "breath". *See also Municipality of Anchorage v. Serrano*, 649 P.2d 256 (Alaska App., 1982) (defendant's breath samples must be preserved for their inde-

pendent analysis or other means must be provided to check breathalyzer results); *Cooley v. Municipality of Anchorage*, 649 P.2d 251, 255 (Alaska App., 1982) (municipality has the burden to convince the jury that the breathalyzer is accurate). We conclude that the trial court did not err in finding the various documents within the breathalyzer packet to be within the public records exception to the hearsay rule.

Byrne does not complain that the various documents were not properly authenticated as did the defendants in *Huggins*. Consequently, it is not necessary for us to determine whether the factors which led us to remand those cases for further proceedings would warrant further action in this case.

The judgment of the district court is AFFIRMED.